**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

Elaine B. Swinford


     v.                                    Civil No. 06-488-JD

Michael J. Astrue, Commissioner,
Social Security Administration


**REPORT AND RECOMMENDATION**

    Claimant Elaine B. Swinford seeks review of a final decision
of the Commissioner of the Social Security Administration denying
her application for certain disability and disability insurance
benefits.  See 42 U.S.C. § 405(g).  Present before the court are
claimant's Motion for Order Reversing Decision of Commissioner
(document no. 8) and respondent's Motion for Order Affirming
Decision of the Commissioner (document no. 9).

    For the reasons that follow, it is recommended that the
court deny claimant's Motion for Order Reversing Decision and
grant respondent's Motion for Order Affirming Decision.


BACKGROUND

    The facts are taken as painstakingly summarized in the Joint
Statement of Material Fact (document no.10), filed on May 11,
2007.

I.  <u>Medical Facts</u>

Claimant was sixty years old when the administrative law judge issued the final decision in this matter on June 9, 2006. She graduated from high school and completed two years of college.  Her past relevant work experience is as a front desk manager at a motel, a certified nurse's assistant, and an administrative assistant.  The medical evidence indicates that claimant suffered a spinal injury in 1999, which caused herniated discs at levels L4–L5 and S1–S2.

On February 11, 2004 claimant complained of numbness in three toes of her left foot and a constant dull achy pain in her lower back, radiating to her buttocks bilaterally with greater pain in the left buttock. (Tr. at 109–110).  Dr. Michael O'Connell diagnosed sacral facet joint arthritis and degenerative disc disease in the lumbar spine.  Claimant was taking medications for pain and an anti-inflammatory for arthritis. (Tr. at 109).  Dr. O'Connell opined that the medication reasonably controlled the pain.  On May 5, 2004, he saw claimant again. The doctor opined that she was depressed and not very motivated; her pain was probably caused by sacral facet joint arthritis and degenerative disc disease. (Tr. at 111–12.)  On September 29,

2

2004, February 2, 2005 and May 11, 2005, claimant was diagnosed with multi-level bulging discs and the doctor felt that she had genuine pain and radiculopathy. (Tr. at 113-18).  On March 19, 2004 Dr. Craig Markert reported that claimant did not suffer from inflammatory or rheumatoid arthritis. (Tr. at 135).  On the same day, Dr. Michael Dipre examined plaintiff who complained of joint pain. The doctor opined that plaintiff had vague joint complaints and no evidence of inflammatory arthritis although she possibly had degenerative arthritis or fibromyalgia.  She was prescribed Prednisone on a trial basis. (Tr. at 119).  Dr. Dipre saw claimant on July 28, 2004 when she complained of depression, tearfulness, and a complete lack of ambition.  She related actually thinking about suicide although having no intention of acting on that. (Tr. at 120).  He opined that claimant's depression was still not controlled and that she needed an activating anti-depressant.  Claimant was also dealing with the recent death of her husband.  An MRI dated August 7, 2004 showed a small benign appearing probable neural epitheleal cyst in the left temporal basil gangliar junction region and otherwise negative findings. (Tr. at 125).  Dr. Joseph N. Sidari saw claimant on September 28, 2004 with regard to her vertigo.  After

examination, the doctor diagnosed unsteadiness and dizziness of
uncertain etiology and problems with depth perception. (Tr. at
121-22).

Dr. O'Connell again saw claimant on August 17, 2005. (Tr. at
141-42).  The observations were similar to previous reports.
Claimant had trouble sleeping.  She had tried a new job but she
had lasted only 8 days.  She complained that her left leg "goes
out" and that she had had a fall.

On July 5, 2005 Dr. Gary P. Francke performed an orthopedic
evaluation of claimant and noted that she was in no active
distress or obvious pain.  Reviewing X-rays of the lumbosacral
spine, the doctor noted no scoliosis, no arthritis and well
preserved hip joints.  There were slight degenerative changes of
the lumbar spine with some slight narrowing of the disc spaces
and a very small bone spur formation.

A physical residual functional capacity assessment was
conducted on July 11, 2005, by Dr. Jonathon H. Jaffe, a non-
examining state agency physician.  The evaluation indicated that
plaintiff was able to sit about six hours in an eight hour day,
and could stand and walk for about six hours.  Plaintiff was able
to lift and carry 20 pounds occasionally and ten pounds

frequently. She could push and pull with no limitations, frequently climb, and occasionally balance, stoop, kneel, crouch and crawl. (Tr. at 126-33). There were no environmental limitations.  In a detailed statement relating the factors taken into account in reaching his conclusions, the evaluator noted that, notwithstanding the physical symptoms, there was "no evidence of past or expected in 12 month period of impairment of listing level severity." (Tr. at 133).  At the administrative hearing, a medical source statement of ability to do work-related activities (physical) by Dr. O'Connell dated February 28, 2006 was made part of the record. (Tr. at 154-57).  The doctor noted that claimant could occasionally lift 10 lbs. and could stand or walk less than 2 hours in an 8-hour workday.  Claimant must periodically alternate sitting and standing to relieve pain or discomfort. These limitations were based upon multi-level disc protrusions, and sacroiliac joint dysfunction. (Tr. at 155).  Claimant could occasionally kneel, crouch or stoop but could never climb, balance or crawl. (Tr. at 155).  There were also environmental limitations. (Tr. at 157).

On November 15, 2005, Dr. Dipre saw claimant and felt she had suffered a muscle spasm in the anterior chest wall.  She

5

complained of pain. (Tr. at 151).  Dr. O'Connell examined claimant on December 7, 2005.  She had many physical complaints and was sad.  On February 13, 2006, claimant had problems with her breathing (asthma) and was prescribed Advair. (Tr. at 150). Claimant went to the emergency room on April 10, 2006 with complaints of epigastric pain and was discharged five days later. The doctor noted that she had acute pancreatitis.  (Tr. at 146). In a discharge summary dated April 16, 2006, Dr. Dipre noted her chronic pain due to arthritis symptoms. (Tr. at 145).

     At the administrative hearing held on May 23, 2006 before administrative law judge Klingebiel, claimant, well represented by counsel, testified that she is a widow, lives alone, is a high school graduate, and expected to receive an associate's degree in May 2007. On examination by her attorney, she testified that she has a valid driver's license and owns a 2000 Chevy Suburban as well as a custom Harley Davidson Sportster that her husband had built for her before he died. (Tr. at 166).  She has not ridden the motorcycle since she was hurt in 1999 although she estimates that she drives about 130 miles a week based on three round trips to school. She went to school to be a phlebotomist in 1998. (Tr. at 167).  She worked at that job for 8 days. (Tr. at 175).  She

is studying to be a drug and alcohol addiction counselor, and attends classes on a regular basis.  The school is very supportive of her and sensitive to her pain.  Claimant's application states that she became disabled on January 2, 2004 after a fall. (Tr. at 169). She worked at a job that was created for her but she had bad days and was eventually terminated. (Tr. at 170).

Claimant described the pain in her lower back, mostly on the left side, from the hip through to the foot.  Three toes of the left foot are always numb and the pain is always there.  Some days are better than others. (Tr. at 171).  She sleeps fitfully and is up two or three times a night. She sleeps about five hours a night. (Tr. at 172).  Claimant related the medication she was taking.  A bottle of 30 pills of Oxycontin prescribed by Dr. O'Connell is supposed to last three months. (Tr. at 173). Vicodin helps to maintain her and the Oxycontin is taken at about four or five o'clock.  When she awakens in the middle of the night with pain, which is always there, she takes Roxycodone.  As a side effect, she gets sleepy or unsteady so she wont drive.  She will not drive while taking Oxycontin.  Her concentration is not as good as it used to be.  The pain becomes present in her brain.

(Tr. at 174).  In class, she can sit 25 to 30 minutes and then leans against the wall where she can shake off the pain and sit down.

Claimant described a typical day, getting up early, and being challenged by the pain. (Tr at 175).  She puts on a coat and takes the dogs out. She takes a hot shower which loosens up her back. She does not dry her long hair because putting up her arms puts stress on her back.  She then takes her medication and is off.  She sees Dr. O'Connell every three months.  She also sees Dr. Dupre, her regular doctor. (Tr. at 176).

At home, claimant does not cook as before and leans on her right side so that there is less pressure on the left side.  She avoids pain.  She does shopping for food and two bags of groceries are packed into four for her. (Tr. at 177).  A big bag of dog food will be put in her car at the supermarket and taken out of the car by a neighbor.

In response to questions from the administrative law judge, claimant said she took her work home from school because her concentration level is not what it used to be and she becomes preoccupied with pain. (Tr. at 179).

## II.   Procedural History

Claimant applied for Social Security Title II disability benefits on April 4, 2005.  The application was denied by the Social Security Administration ("SSA"), initially on July 15, 2005, and on reconsideration.  An administrative law judge considered the case <u>de novo</u>, and determined on June 9, 2006, that claimant was not disabled.  (Tr. at 13-17MA.)

The administrative law judge applied the required five step evaluation process described in 20 C.F.R. §§ 404.1520(a).  <u>See Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987); <u>see also</u> <u>Goodermote v. Health & Human Servs.</u>, 690 F.2d 5, 6-7 (1st Cir. 1982).  As applied in this case, the analysis proceeded as follows: (1) the claimant meets the necessary disability insured status until June 30, 2009 and has not engaged in substantial gainful activity at any time relevant to the final decision; (2) the claimant has a severe impairment, in her back pain and degenerative disc disease; (3) the impairment was not equivalent to one of a number of the Listings; (4) the claimant retained the residual functional capacity to perform the full range of light exertion work.  Because the impairment did not prevent her from performing the type of work she had engaged in previously, specifically, that of a front desk manager for a motel, the administrative law

9

judge determined that the claimant was not disabled.  As a result, he did not reach Step Five, which requires a determination of whether claimant was able to perform other work in the national economy.

The Appeals Council affirmed the hearing officer's decision on November 9, 2006.  Claimant then filed a complaint on December 29, 2006 (document No. 1), alleging that the decision denying her disability benefits violated the substantial evidence rule and was otherwise erroneous.  Claimant then filed a Motion here for Order Reversing Decision of Commissioner (document no. 8); respondent filed a Motion for Order Affirming Decision of the Commissioner (document no. 9).

<u>DISCUSSION</u>

Having exhausted the available administrative process, claimant challenges the Commissioner's determination that she is not disabled, and requests judicial review of the Commissioner's determination.

I. <u>Standard of Review</u>

Pursuant to 42 U.S.C. § 405(g), the court is empowered to affirm, modify, reverse or remand the decision of the Commissioner, based upon the pleadings and transcript of the

record.  See 42 U.S.C § 405(g).  In reviewing a Social Security
decision, the factual findings of the Commissioner shall be
conclusive if supported by "substantial evidence" in the record.
See Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769
(1st Cir. 1991) (quoting 42 U.S.C. § 405(g)).  "Substantial
evidence" is more than a "mere scintilla," see Richardson v.
Perales, 402 U.S. 389, 401 (1971), in other words, it is "such
relevant evidence as a reasonable mind might accept as adequate
to support a conclusion."  See id.; see also Currier v. Sec'y of
Health & Human Servs., 612 F.2d 594, 597 (1st Cir. 1980).  It is
the Commissioner's responsibility to determine issues of
credibility and to draw inferences from the evidence in the
record.  See Rodriguez v. Sec'y of Health & Human Servs., 647
F.2d 218, 222 (1st Cir. 1981).  Further, the power to resolve
conflicts in the evidence lies with the Commissioner, not the
courts.  See id.

## II. Step Four in the Disability Analysis

Claimant argues in a comprehensive memorandum that the
administrative law judge erred in ending the sequential analysis
at step four by finding her able to perform her past relevant
work because the judge's residual functional capacity assessment

was fatally flawed.  She also argues that the administrative law
judge's residual capacity assessment completely ignores the
mental impairment which must be considered even if such
impairment is non-severe.  <u>See</u> Social Security Ruling 96-8p.
Claimant argues that the judge neglected to go through a line-by-
line description and detailed demands of the job duties of hotel
clerk.  Such analysis would have revealed that two of the
requirements would have been compromised by plaintiff's
depression and/or the experience of chronic pain, that is,
dealing with work situations that involve frequent changes of
tasks using different techniques, procedure or degrees of
attention without loss of efficiency or composure, and dealing
with people in work situations.  Claimant attacks the judge's
reliance on the incomplete consultative examination of Dr.
Francke because the assessment was useless for a step four
analysis.  Here, claimant presses the argument that the
administrative law judge failed to seek expert evidence to
complete Dr. Francke's assessment (orthopedic evaluation) which
simply concluded that claimant "does preserve the ability to do
basic work activity such as sitting, standing, walking, bending,
lifting and carrying." (Tr. at 124).  She charges that the

judge's assessment was not only contrary to the opinions in the consultative examiner's report, which found no limitations on claimant's work capacity, but that it was directly contradicted by the only other medical opinion cited in the final decision, the assessment of the treating source, Dr. O'Connell.

A person is considered disabled when she is unable to "engage in any substantial gainful activity by reason of any determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." See Thomas v. Sec'y of Health & Human Servs., 659 F.2d 8, 9 (1st Cir. 1981); see also 42 U.S.C. §§ 416(i)(1)(A) and 423(d)(1)(A)). Step Four requires a comparison of work demands against a claimant's current functional capacity. See 20 C.F.R. § 404.1520(e). At Step Four, the initial burden is on the claimant to show that she can no longer perform her former work, because of her impairment. See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985). The administrative law judge is entitled to credit the claimant's own description of her limitations and former job duties, but is under some burden to independently develop the record. See Manso-Pizarro v. Sec'y of Health & Human Servs, 76 F.3d 15, 17

(1st Cir. 1996).  If the claimant has raised an issue of capability to perform, the administrative law judge must rely on medical evaluations, unless the extent of functional loss and its effect on performance would be apparent even to a lay person. See id.

Here, claimant argues that the administrative law judge failed to make certain that her mental impairments had been evaluated according to the analytical framework required by the Agency's own regulations, i.e. 20 C.F.R. §404.1520a (evaluation of mental impairments), and failed to consider whether her impairments deprived her of the temperament required to successfully perform the job of hotel clerk, particularly since she lost her last job because of an altercation with a co-worker. The latter error is arguably premised on the judge's basing his residual functional capacity determination on a consultative examiner's report that contained no assessment of claimant's mental or physical functional capacity.  Claimant also takes issue with the administrative law judge's having accorded no weight to the residual functional capacity assessment of her treating source.   Claimant emphasizes a mental condition that was arguably ignored by the administrative law judge in reaching

the final decision.  The record contains evidence of treatment
for depression and crying spells after the loss of her husband.
However, there is no evidence of sustained, continued treatment
for depression and no evidence of significant physical and mental
functional limitations due to any mood swings or depression.  Dr.
O'Connell, claimant's treating physician, makes reference to her
depression and lack of motivation. (Tr. at 112) Dr. Dipre treated
claimant for depression with Wellbutrin, switching her from
Effexor. (Tr. at 120).  An opinion of a treating physician is
entitled to controlling weight, if it is supported by objective
medical findings and is not inconsistent with other substantial
evidence in the record.  See 20 C.F.R. § 404.1527(d)(2); see also

   Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982).  If the
treating physician's opinion is not accorded controlling weight,
the administrative law judge will consider all the evidence,
including  consultative examinations, see 20 C.F.R. §
404.1527(c)(2), and will weigh the treating physician's opinion
according to established factors.  See 20 C.F.R. § 404.1527(d)(1-
6) (factors affecting weight given to medical evidence include
treating relationship, as affected by length, exam frequency,
nature and extent; supportability; consistency; specialization;

and other supporting or contradictory factors).  Moreover, the resolution of conflicts in the medical evidence is reserved to the administrative law judge, and his determination must be affirmed by this court if there is substantial evidence to support his conclusion.  See Barrientos v. Sec'y of Health & Human Servs., 820 F.2d 1, 2-3 (1st Cir. 1987).

While claimant may very well experience depression, the evidence of record supports the conclusion that her condition is neither severe nor debilitating since it does not manifest in functional limitations, notwithstanding one notation of the consideration of suicide. (See Tr. at 53-56, 58, 61-63, 109, 111-14, 116, 120, 133 139).

Claimant contends that the hearing officer's Step Four analysis was deficient because he did not consider any expert's evaluation that actually addressed residual functional capacity, but instead made his own decisions based on raw medical data and an incomplete consulting physian's report.  See Santiago v. Sec'y of Health & Human Servs., 944 F.2d 1, 5 (1st Cir. 1991) (measurement of former work against claimant's capabilities requires expert's RFC assessment unless the functional loss and its effects would be apparent to lay person); see also Manso-

16

<u>Pizarro</u>, 76 F.3d at 17 (same); <u>Perez v. Sec'y of Health & Human
Servs.</u>, 958 F.2d 445, 446 (1st Cir. 1991) (ALJ's conclusions
about claimant's physical exertional capacity not supported by
substantial evidence absent assessment of RFC by physician); <u>see
also</u> <u>Gordils v. Sec'y of Health & Human Servs.</u>, 921 F.2d 327, 329
(1st Cir. 1990) (ALJ's reliance on RFC of non-examining, non-
testifying physician constitutes substantial evidence when
supported by other record evidence). While the administrative law
judge does not specifically address the physical residual
functional capacity assessment of Dr. Jaffe, that assessment of
record supports the final decision, whether specifically alluded
to or not.  The administrative law judge may also consider
claimant's own testimony in assisting him in resolving
conflicting evidence. The record as a whole, including Dr.
Jaffe's assessment, supports the conclusion, consistent with the
substantial evidence rule, that the administrative law judge did
not make his own determination by translating medical data into
functional terms.

Instead, the administrative law judge made his determination
based in part on the medical evaluations in the record.  The
administrative law judge weighed plaintiff's testimony noting

that medication helped her in maintaining her pain level and that the side effects of sleepiness were only present when she takes the Oxycontin. (Tr. at 17).  The judge noted that her alleged level of pain did not correspond with the underlying objective medical etiology, particularly since the radiological and clinical examinations of 2005 identified only slight disc space narrowing and a very small bone spur, with no diminished range of motion and only slight paresthesias in the left toes. (Tr. at 17).  He noted in the rationale that the pain medication has managed her pain well without the need for surgery or more aggressive modalities. (Tr. at 17).  Indeed, notwithstanding her allegations of disabling pain, this obviously valiant person does not take pain medication to sleep (although she sleeps fitfully), participates in school three times a week, drives about fifty miles a day to commute to college, and independently cares for herself, including laundry, food shopping and the preparation of very simple meals, and also cares for her dogs and cat. (Tr. at 53, 54, 55, 164, 166, 168, 175-80).

        If there is a substantial basis in the record for an ALJ's decision, the court must affirm the decision, whether or not another conclusion is possible.  See Ortiz, 955 F.2d at 769.

Furthermore, opinions of non-examining physicians, supported by other evidence in the record may constitute substantial evidence. See <u>Gordils</u>, 921 F.2d at 329.  Thus, Dr. Jaffe's physical residual functional capacity assessment of July 21, 2005 discussed above, may constitute substantial evidence supporting a decision that claimant was capable of performing her past relevant work.

The Step Four analysis next required the administrative law judge to determine the demands of claimant's prior jobs.  <u>See Santiago</u>, 944 F.2d at 5.  To make this comparison, the administrative law judge is allowed to rely on information found in the <u>Dictionary of Occupational Titles</u> ("DOT") to define the demands of a job as it is usually performed.  <u>See</u> 20 C.F.R. § 404.1566(d)(1).  The judge reviewed the requirements of claimant's previous relevant work as a hotel clerk, which is semi-skilled in nature. The work is classified as light, requires dealing with people, and involves interpersonal relationships in a job setting beyond giving and receiving work instructions.  <u>See D.O.T.</u>, 238.367-038.  He then compared claimant's residual functional capacity and daily activities with the DOT job description and the physical and mental demands of the work.  It

was reasonably noted in the rationale of the final decision that claimant is socially active with friends, participates in the American Legion, and retains the ability to perform a range of activities that correspond with the light exertional range.  See Gray, 760 F.2d at 371.  If a claimant can perform a type of work that she has performed in the past, she will be found capable of performing her past relevant work.  See Gray, at 372; see also 20 C.F.R. § 404.1565(a).  As a result, the administrative law judge determined claimant had the capability to perform her prior type of work and was not disabled.  This determination is supported by substantial evidence in the record.

In summary, the rationale behind the final decision reflects a careful weighing of the evidence of record and the traditional making of credibility determinations.  While the administrative law judge recognized that plaintiff suffers a degree of pain which results in functional limitations, he also reasonably found that the pain did not preclude her from performing her past relevant work as a front desk manager for a hotel, a job which is considered semi-skilled.  The dearth of evidence related to a disabling mental impairment, such as depression, is reflected in the failure of its being mentioned not only in plaintiff's

initial application for benefits but also at the administrative hearing, and the lack of evidence in the record to show any functional limitations resulting from depression.  While evaluating the vocational impact of a mental impairment presents a set of difficult challenges in the disability determination process, this does not mean that every allegation of mental impairment needs expert testimony when the record can be reviewed in a common sense manner, such as in this case.  Notwithstanding claimant's allegations regarding depression, there is neither record of sustained treatment for a mental impairment nor clinical evidence of a severe mental impairment lasting for more than 12 months, aside from evidence of the expected depression resulting from the loss of a loved one.  Finally, there is insufficient evidence in this record to support a closed period of disability based on a mental impairment.

### CONCLUSION

Looking at the evidence as a whole, I cannot find that the Commissioner has failed to comply with the requirements of the substantial evidence rule.  There being no good reason to remand, I recommend that plaintiff's Motion for Order Reversing Decision (document no. 8) be denied and that  respondent's Motion for an

Order Affirming the Decision (document no. 9) be granted.

Any objections to this report and recommendation must be filed within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See Unauthorized Practice of Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).


                              /s/Justo Arenas
                              Justo Arenas
                              United States Magistrate Judge


Date:      August 8, 2007

cc:        David L. Broderick, Esq.
           Peter K. Marsh, Esq.
           United States Social Security Administration

22